IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD SMITH, #R-07226, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00126-NJR |
| ) | |
| KIM BUTLER, OFFICER CLARK, ) | |
| HEAD WARDEN JOHN DOE, ) | |
| TACTICAL COMMANDER JOHN DOE, ) | |
| and INTERNAL AFFAIRS JOHN DOES, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ronald Smith, an inmate currently incarcerated at Western Illinois Correctional Center, brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The complaint arises out of events that occurred while Plaintiff was an inmate at Menard Correctional Center ("Menard").

## Merits Review Under 28 U.S.C. § 1915A

The complaint is before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully considering the allegations, the Court finds that Plaintiff's complaint survives preliminary review under § 1915A.

## The Complaint

According to the complaint, on or about April 8, 2014, the tactical team for the Illinois Department of Corrections conducted a shakedown of the South Upper cell house at Menard. (Doc. 1, p. 7). Plaintiff and all of the other South Upper inmates were rear handcuffed, escorted out of the cell house, and forced to stand in a line with their heads down. *Id*.

While standing in line, Plaintiff claims that Defendant Clark, a tactical officer standing next to him, placed his hand on Plaintiff's neck, squeezed, and forcefully bent Plaintiff's neck down toward the ground for approximately twenty seconds. *Id*. As Defendant Clark was holding Plaintiff's head down, another unknown tactical officer told Defendant Clark to "chill out"

because internal affairs was watching. *Id*. Plaintiff claims that because he was rear handcuffed, Defendant Clark's action caused him to suffer excruciating pain in the neck and shoulder area. *Id*. Plaintiff alleges that Defendant Clark's actions were not undertaken in a "good faith effort to maintain or restore discipline." *Id*. at 11. Instead, Plaintiff asserts that Defendant Clark acted "maliciously and sadistically to cause harm to Plaintiff." *Id*. Plaintiff never received a disciplinary ticket, and he insists that he was complying with all orders.

In addition to other members of the tactical team, Defendant Butler (assistant warden of Menard) and Defendant Head Warden John Doe were present. Plaintiff believes that Defendant Butler and the Head Warden observed Defendant Clark's actions (because they were present in the yard), but they did nothing to stop Defendant Clark. *Id*. at 7-8.

Next, Plaintiff and the other inmates from his cell house were escorted to the chapel where members of the tactical team forced them to stand with handcuffs behind their backs and their heads facing the floor for a "prolonged period of time," even though there were chairs available. *Id*. at 8. Plaintiff alleges that Defendant Tactical Commander John Doe authorized and/or ordered tactical team members to enforce this standing position. *Id*. at 12. After standing in this same position for an extended period of time, some of the inmates began to fall to the ground, including Plaintiff. Plaintiff asserts that the pain in his neck and shoulder was "excruciating" and "unbearable." *Id*. at 8. Members of the medical technical team attended to Plaintiff and the other inmates who had collapsed. Only after members of the medical team intervened were the inmates allowed to sit down. *Id*. Even then, members of the tactical team continued to taunt the inmates. Plaintiff was advised by the medical technical team that they would follow up with him later, but he contends that they never did. (Doc. 1, Ex. E2). He claims that his neck and shoulder continued to hurt for the next couple of weeks.

Plaintiff filed a grievance regarding the events that occurred on April 8, 2014. The grievance officer was unable to substantiate the allegations, and the grievance was forward to the office of internal affairs for further investigation. *Id*. at 9. On June 13, 2014, Plaintiff received another response from the grievance office, which stated in pertinent part that the office "cannot identify anyone the offender is referencing" and that Plaintiff had not named "Wardens or tact members or even describe them for an investigation." (Doc. 1, Ex. E1). The response further noted that the Statewide Tactical Commander, who had been contacted, had advised "procedure was followed and allegations of misconduct were denied." *Id*. Plaintiff asserts that the grievance officer ignored information he had in fact provided identifying Officer Clark, Assistant Warden Butler, and the Head Warden in a previous grievance. (Doc. 1, Ex. D).

Plaintiff asserts claims against Tactical Officer Clark, Assistant Warden Butler, Head Warden John Doe, Tactical Commander John Doe, and unnamed/unspecified officers in Internal Affairs.[1]

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless

---

[1] Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). As will be discussed below, Plaintiff has sufficiently stated a claim against the individuals who were Head Warden and Tactical Commander at the time of the events described here. Identifying the names of these individuals should be relatively easy.

otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:      Use of Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim; at the same time, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff alleges that Defendant Clark used excessive force against him without any apparent penological justification when he squeezed Plaintiff's neck and forced his head down while Plaintiff was handcuffed from behind. The degree of force used and the reason for its use are factual determinations that cannot be resolved at the pleadings stage. Thus, Plaintiff may proceed on his excessive force claim against Defendant Clark at this time.

Plaintiff further alleges that Defendant Tactical Commander John Doe used excessive force when he ordered and/or authorized members of the tactical team to force inmates to stand in an awkward position for an unreasonable amount of time. The doctrine of respondeat superior does not apply to § 1983 actions; in order to be liable a defendant must be alleged to be personally responsible for the constitutional violation. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). But where a defendant, as in this case, has been alleged to have *directed the conduct* or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). As such, Plaintiff may also proceed on his excessive force claim against Defendant Tactical Commander John Doe.

Finally, Plaintiff asserts that Defendant Head Warden John Doe is also liable for the alleged excessive force used against Plaintiff by Defendants Clark and the Tactical Commander because as head warden he is "legally responsible for the operation of Menard Correctional Center and for the welfare of Plaintiff at all times." (Doc. 1, p. 13). As discussed above, § 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a

constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir.2005) (citations omitted). No allegations in the complaint suggest that the Head Warden participated in the use of excessive force against Plaintiff; the Head Warden cannot be held liable for the alleged violation of Plaintiff's constitutional rights merely because he is the chief administrator of the prison. There is no suggestion in the complaint that he ordered the conduct or gave his consent. Therefore, Plaintiff may not proceed on his claim of excessive force (Count 1) against Head Warden John Doe.

**Count 2:     Failure to Intervene**

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994). An inmate asserting a failure to intervene claim under § 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison,* 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994)).

Plaintiff claims that Defendant Butler and Head Warden John Doe violated his constitutional rights because they were present and he *believes* they observed Defendant Clark using excessive force but failed to intervene. Plaintiff also states that the incident involving Defendant Clark lasted only twenty seconds. It seems unlikely that Defendant Butler or Head Warden John Doe would have had a reasonable opportunity to intervene, given the circumstances and the brevity of the incident, assuming they were even present and Defendant Clark's actions indeed constituted excessive force. But those are questions of fact that cannot be resolved at this stage. *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir.

1997) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.") Therefore, Plaintiff may proceed on his failure to intervene claim (Count 2) against Defendant Butler and Head Warden John Doe.

**Count 3:     Failure to Investigate**

Plaintiff complains that John Doe Officers working for Internal Affairs failed to properly investigate and respond to his grievances relating to the events on April 8, 2014. But the fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not create liability. In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Prison grievance procedures are not constitutionally mandated and thus the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct" cannot be a basis for liability under § 1983. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Thus, Plaintiff has no claim against Defendant John Doe Officers working for Internal Affairs. Count 3 will be dismissed with prejudice. Since this is the only claim Plaintiff asserts against John Doe Officers working for Internal Affairs, they shall be dismissed from this action.

In summary, Plaintiff shall be allowed to proceed with his Eighth Amendment excessive force claim (Count 1) against Defendants Clark and Tactical Commander John Doe, but not

against Head Warden John Doe. He may also proceed on his failure to intervene claim (Count 2) against Defendants Butler and Head Warden John Doe. Plaintiff's failure to investigate claim (Count 3) is dismissed with prejudice. Defendant John Doe Officers working with Internal Affairs are dismissed without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that Defendants **JOHN DOE OFFICERS WORKING WITH INTERNAL AFFAIRS** are **DISMISSED** without prejudice from this action.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on the following claims: **COUNT 1** (excessive force claim) against Defendants **CLARK** and **TACTICAL COMMANDER JOHN DOE** and **COUNT 2** (failure to intervene claim) against Defendants **BUTLER** and **HEAD WARDEN JOHN DOE**.

**COUNT 1** is **DISMISSED** without prejudice against Defendant **HEAD WARDEN JOHN DOE** and **COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **CLARK** and **BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the remaining John Doe Defendants (**HEAD WARDEN**

**JOHN DOE** and **TACTICAL COMMANDER JOHN DOE**) until such time as Plaintiff has identified these John Doe Defendants by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all*

*parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 18, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**