## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 15-CV-126-NJR-DGW** |
| ) | |
| **KIMBERLY BUTLER,** ) | |
| **BRADLEY CLARK, HEAD WARDEN** ) | |
| **JOHN DOE, and TACTICAL** ) | |
| **COMMANDER JOHN DOE,** ) | |
| ) | |
| **Defendants.** ) | |

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Ronald Smith, an inmate in the Illinois Department of Corrections, filed this *pro se* lawsuit on February 6, 2015, alleging that he was subjected to excessive force during a shakedown at Menard Correctional Center. The original complaint asserts claims against Tactical Officer Bradley Clark, Assistant Warden Kimberly Butler, Head Warden John Doe, Tactical Commander John Doe, and unnamed/unspecified officers in Internal Affairs (Docs. 1, 5). Following a threshold review of the complaint pursuant to 28 U.S.C. 1915A, Plaintiff was permitted to proceed on his excessive force claim against Defendants Clark and Tactical Commander John Doe and his failure to intervene claim against Defendants Butler and Head Warden John Doe (Doc. 5). The Defendant John Doe Officers working with Internal Affairs were dismissed without prejudice (Doc. 5).

Defendants Kimberly Butler and Bradley Clark filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing

suit as required by the Prison Litigation Reform Act (Doc. 26). In particular, they claim that Plaintiff filed two relevant grievances, and he received a final determination from the ARB on February 10, 2015, which was four days after he filed suit (Doc. 26). On December 14, 2015, Magistrate Judge Donald Wilkerson issued a Report and Recommendation in which he recommended granting the motion for summary judgment on the issue of exhaustion filed by Defendants Butler and Clark (Doc. 26). Magistrate Judge Wilkerson also recommended granting summary judgment under Rule 56(f) against the unknown Defendants even though they did not move for summary judgment because there was no indication that Plaintiff submitted any other fully exhausted grievances relevant to this incident (*Id.*).

After reviewing the Report and Recommendation, the undersigned determined a material issue of fact remained, which prevented adopting the Report and Recommendation and granting summary judgment in favor of Defendants (Doc. 42). As the undersigned explained in the previous order, the question of whether Plaintiff exhausted his administrative remedies prior to filing suit comes down to the date of the responses from the ARB (Doc. 42). The date written at the top of the responses in the blank labeled "date" was "1/30/15" (Doc. 27-2, pp. 12, 18). If January 30th was the date of the ARB's responses, then Plaintiff would be safe because he filed suit on February 6th. But Defendants claim that date is the date on which the Chairperson for the ARB signed the responses, not the Director (Doc. 27, p. 3). The Director did not concur until February 10, 2015, as evidenced by a notation at the bottom of each response under the signature of the Director, S.A. Godinez, that says "TA 2/10/15" (Doc. 27, pp. 3, 5; Doc.

27-2, pp. 12, 18). Therefore, according to Defendants, the date of the ARB's final determinations is February 10th (Doc. 27, pp. 3, 5). If true, that means Plaintiff filed suit prior to receiving the ARB's responses, and his case must be dismissed.

The problem was that it was not inherently obvious that the notation "TA 2/10/15" represented the date on which Director Godinez signed the responses, and Defendants failed to provide an affidavit or other evidence supporting that assertion. Defendants were given an opportunity to submit additional evidence to firmly establish the date of the ARB's decisions (*see* Doc. 42), and they submitted an affidavit from Terri Anderson, the woman behind the initials "TA" (Docs. 46, 48).

Ms. Anderson explained that the final stage of the grievance procedure is an appeal to the Director of the IDOC (Doc. 48, ¶3). *See also* ILL. ADMIN. CODE tit. 20, § 504.850(a). The Illinois Administrative Code, however, permits the Director to delegate to a designee his responsibilities under the grievance procedure (Doc. 48, ¶4). Consequently, the Director does not review or sign any of the grievance appeal determinations (Doc. 48, ¶5). Instead, the ARB conducts the initial review of all appeals and then submits a written report of its findings and recommendations to the Director's designee (Doc. 48, ¶4). *See also Dole v. Chandler*, 438 F.3d 804, 807 (7th Cir. 2006) (citing ILL. ADMIN. CODE tit. 20, § 504.850(b) and (f). The designee then reviews the ARB's written report and makes a final determination by signing the Director's name (Doc. 48, ¶¶3, 5). Terri Anderson has been the Director's designee, and thus has signature authority for the Director on all grievance appeals, since November 1, 2004 (Doc. 48, ¶¶1, 5). She signs the Director's signature and then places her own initials and the date

next to the signature (Doc. 48, ¶¶5, 6). Therefore, the date listed next to the Director's signature is the date of the final determination of the grievance appeal (Doc 48 ¶6).

In this case, as previously mentioned, both grievance appeals contain the notation "TA 2/10/15" under the signature of Director S.A. Godinez (Doc. 27-2, pp. 12, 18). The Court now knows that means Terri Anderson signed the appeal on behalf of Director Godinez on February 10, 2015. Accordingly, February 10, 2015, is the date of the Director's final determination, however, Plaintiff filed suit four days before that determination (Doc. 1). Consequently, Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by the PLRA, and his case must be dismissed. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Plaintiff attempts to avoid this conclusion by noting that the ARB took longer than six months to issue its final determination (Doc. 49). According to the Illinois Administrative Code, the Director is to make a decision within six months after receipt of the appealed grievance "where reasonably feasible under the circumstances." ILL. ADMIN. CODE, tit. 20, § 504.850(f). Plaintiff's appeals were dated July 15, 2014, but the ARB did not receive them until August 1, 2014 (Doc. 27-2, pp. 13, 19). So a final determination should have been made, if "reasonably feasible under the circumstances," by February 1, 2015. Plaintiff did not receive a determination by that date, and he waited another five days before filing suit on February 6, 2015 (Doc. 1). Four days later, the Director made his final determination.

As the Administrative Code clearly indicates, the recommended six-month timeframe for the Director to respond should be adhered to "where reasonably feasible

under the circumstances." ILL. ADMIN. CODE, tit. 20, § 504.850(f). But the six-month timeframe is not a strict deadline.[1] And prisoners cannot make a beeline for the court immediately after the recommended response time expires.[2] It is unclear exactly how long prisoners have to wait, but case law has firmly established that five days is simply not enough.[3] Accordingly, Plaintiff's claims against Defendants Kimberly Butler and Bradley Clark will be dismissed without prejudice for failure to exhaust administrative remedies.

As for the other two remaining Defendants, Head Warden John Doe and Tactical Commander John Doe, Plaintiff's claims against them will also be dismissed without prejudice. The unknown Defendants did not move for summary judgment. In fact, they

---

[1] *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). *See also Gregory v. Santos*, No. 07-CV-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010), *report and recommendation adopted as modified*, 2010 WL 750040 (S.D. Ill. Mar. 3, 2010) ("Section 504.850(f) does not strictly require the Director to respond to an appeal within six months."); *Beahringer v. Page*, 789 N.E.2d 1216, 1226 (Ill. 2003) ("The time frames for the consideration of grievances were directory and not mandatory.") It appears to be widely accepted that the grievance process does not become unavailable simply because a response is tardy. *See, e.g., Ford*, 362 F.3d at 400 (rejecting inmate's argument that the administrative process is no longer available once the recommended deadline has passed); *Beahringer*, 789 N.E.2d at 1226 (holding that because the time frames were not mandatory, "they did not grant plaintiff an automatic right of action.").

[2] *See, e.g., Ford*, 362 F.3d at 400 (rejecting inmate's argument that the administrative process is no longer available once the recommended deadline has passed); *Beahringer*, 789 N.E.2d at 1226 (holding that because the time frames were not mandatory, "they did not grant plaintiff an automatic right of action.").

[3] *See Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) (prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60-day response period elapsed); *Jamison v. Franko*, No. 12 C 0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013) (prisoner failed to exhaust where he filed suit less than two weeks after the 30-day response period had elapsed); *Gregory v. Santos*, No. 07-CV-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010), *report and recommendation adopted as modified*, 2010 WL 750040 (S.D. Ill. Mar. 3, 2010) (prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). *But see Dole v. Chandler*, 438 F.3d 804, 809–11 (7th Cir. 2006) (rejecting argument that prisoner failed to exhaust when he properly submitted grievance when prison officials lost his appeal to the ARB and he waited 18 months before filing suit); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (rejecting argument that prisoner failed to exhaust when he waited between one and four months for a response to his grievance before filing suit); *Kyles v. Mathy*, No. 09-1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010) (prisoner exhausted when he waited approximately one and a half months after the expiration of the two-month response deadline before moving on to next step of grievance process); *Green v. Hartman*, No. 04 C 4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006) (prisoner exhausted where he waited to file suit until two months after the expiration of the 30-day response deadline); *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001) (prisoner exhausted where he waited to file suit until 45-days after the warden's response was due).

have not even been identified or served with process in this matter. But under Rule 56(f) of the Federal Rules of Civil Procedure, the Court can grant summary judgment for a nonmovant after giving the plaintiff notice and a reasonable time to respond. The Report and Recommendation provided notice to Plaintiff and an opportunity to respond to Magistrate Judge Wilkerson's conclusion that he failed to exhaust with respect to unknown Defendants. Plaintiff did not do so. The Court finds that the facts of this case and the arguments presented by Defendants Butler and Clark apply with equal force to the unknown Defendants. If the two grievances were insufficient to exhaust his administrative remedies against Defendants Butler and Clark, they were also insufficient with respect to the unknown Defendants.

The Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 40) and **GRANTS** the Motion for Summary Judgment on the issue of exhaustion filed by Defendants Kimberly Butler and Bradley Clark (Doc. 26). This case is **DISMISSED** without prejudice for failure to exhaust administrative remedies.

<u>**NOTICE**</u>

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an

extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–

20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:   February 25, 2016**

**/s Nancy J. Rosenstengel**
**NANCY J. ROSENSTENGEL**
**United States District Judge**